# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

MICHELLE SALYERS,                )
                                 )
    Plaintiff,                   )
                                 )
vs.                              )   Case No. CIV-14-387-L
                                 )
CAROLYN W. COLVIN, acting        )
Commissioner Social Security     )
Administration,                  )
                                 )
    Defendant.                   )

## REPORT AND RECOMMENDATION

Defendant Acting Commissioner (Commissioner) issued a final decision denying Michelle Salyers' (Plaintiff) application for disability insurance benefits under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). United States District Court Judge Tim Leonard referred the matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(b)(3) and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, the administrative record (AR), and the parties' briefs, and recommends that the court affirm the Commissioner's decision.

### I.  Administrative proceedings.

Plaintiff filed an application for disability insurance benefits alleging that she became disabled on August 31, 2011. AR 107. The Social Security

Administration (SSA) denied Plaintiff's claim, and at her request, an ALJ conducted a hearing. *Id.* at 18-37. In his February 2013 decision, the ALJ found that Plaintiff was not disabled from August 31, 2011, through the date of his decision. *Id.* at 17. The SSA Appeals Council declined Plaintiff's request for review, *id.* at 1-5, and Plaintiff now seeks review in this Court. Doc. 1.

## II. The ALJ's findings.

Following the well-established five-step inquiry to determine whether a claimant is disabled, *see* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps), the ALJ found that Plaintiff: (1) meets the insured status requirements through March 31, 2016; (2) has not engaged in substantial gainful activity since August 31, 2011; and (3) has severe "fibromyalgia; fractures of the ribs, scapula, fifth metacarpal, and vertebra . . . ."[1] AR 12. The ALJ then found that Plaintiff: (1) has the RFC to perform sedentary work with some exertional and nonexertional limitations at a SVP-2 work level, *id.* at 13, and (2) can perform other jobs existing in significant numbers in the national economy. *Id.* at 16-17.

---

[1] Unless otherwise indicated, all quotations are reprinted verbatim.

### III. Plaintiff's claims.

Plaintiff challenges the Commissioner's decision to deny her benefits on four grounds. First, she alleges that the ALJ erred in rejecting her treating physician's opinions. Doc. 10, at 10-13. Second, Plaintiff argues that the ALJ failed to include any limitations in her RFC related to "fatigue and insomnia." *Id.* at 13-15. Third, Plaintiff alleges that the ALJ "fail[ed] to indicate any medical evidence or medical opinion that [she] would be capable of performing even SVP 2 level work on a sustained basis." *Id.* at 15. Fourth and finally, Plaintiff claims that the ALJ erred in assessing her credibility. *Id.* at 16.

### IV. Analysis.

#### A. Standard of review.

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).

#### B. The ALJ's alleged error in rejecting the treating physician's opinions.

Plaintiff's treating physician, Dr. Jesse Campbell, submitted his opinions regarding Plaintiff's physical and mental limitations. AR 320-23. The ALJ rejected both opinions.

### 1. The treating physician rule.

"According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Under that rule, the ALJ must first determine whether the treating physician's opinion is to be accorded "controlling weight." *Krauser v. Astrue*, 638 F.3d 1324, 1330. The opinion is entitled to "'controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record.'" *Id.* (citation omitted). If the ALJ finds that the opinion is not entitled to "controlling weight," he must then "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons . . . for the weight assigned." *Id.* If the ALJ ultimately rejects the treating physician's opinion, he must provide specific and legitimate reasons for doing so. *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

### 2. Dr. Campbell's opinion regarding Plaintiff's physical limitations.

Plaintiff's treating physicians diagnosed her with fibromyalgia, AR 202-05, 231, and Dr. Campbell opined, in relevant part, that she: (1) can stand and/or walk less than fifteen minutes continuously and less than one

hour in an eight-hour workday; (2) can sit for only thirty minutes continuously and for only two hours in an eight-hour workday; and, (3) will need to "lie down or recline" every two hours. *Id.* at 322-23. The ALJ rejected this opinion, stating:

> I have given little weight to the opinions of Dr. Campbell as they are not supported by and wholly inconsistent with the medical evidence of record. . . . Dr. Campbell opined [Plaintiff] could sit only 2 hours in a workday and stand and walk less than 1 hour; however, his physical examinations were essentially normal. He noted [Plaintiff] had tender points upon examination, but he also consistently noted [Plaintiff] had a normal gait and no neurological deficits. Moreover, her rheumatology lab reports were all negative. Therefore, I find that is good reason to reject Dr. Campbell's opinions, and I have provided them little weight.

*Id.* at 15.

Plaintiff alleges reversible error, arguing that she had a long treating history with the physician and the medical evidence supports a fibromyalgia diagnosis. Doc. 10, at 11-12. According to Plaintiff, because the medical record does in fact support the diagnosis, the ALJ's reason for rejecting Dr. Campbell's opinion is not legitimate. *Id.* at 12-13. Plaintiff misreads the ALJ's opinion.

The ALJ acknowledged that Plaintiff has severe fibromyalgia.[2] As required, the ALJ then examined whether that impairment is *disabling*. *See* Social Security Ruling 12-2p, 2012 WL 3104869, at *5 (July 25, 2012) (noting that *after* the SSA establishes "that a person has . . . [fibromyalgia], [the agency] will consider it in the sequential evaluation process to determine whether the person is disabled"). In doing so, the ALJ reviewed the medical evidence, including Dr. Campbell's treatment notes. AR 14-15. Dr. Campbell's notes support that Plaintiff experiences fibromyalgia pain; however, the physician never documented an inability to sit and/or stand for specified lengths, and he consistently noted that Plaintiff has a normal gait, normal strength and reflexes, and normal neurological functioning. *Id.* at 217-93, 378-94.

Rather than rejecting the physician's opinion based on a lack of objective medical evidence to support the fibromyalgia diagnosis – as Plaintiff suggests – the ALJ relied on the inconsistency between Dr. Campbell's physical findings during Plaintiff's treatment and the physician's opinion regarding her physical limitations. And, as Dr. Campbell's own treatment

---

[2]   Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue." *Brown v. Barnhart*, 182 F. App'x 771, 773 n.1 (10th Cir. 2006) (quotation omitted). "It is a chronic condition, causing long-term but variable levels of muscle and joint pain, stiffness and fatigue." *Id.* (quotation omitted).

notes do not support his opinion, the undersigned finds that the ALJ did not error in rejecting the treating physician's opinion. *See Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (affirming the ALJ's decision to give treating physician's opinion little weight because it was "inconsistent with other medical evidence"); *see also West v. Barnhart*, 254 F. Supp. 2d 1216, 1225-26 (D. Kan. 2003) (holding that the ALJ did not err in rejecting treating physician's opinion regarding the physical limitations of claimant's fibromyalgia because he "is not required to accept a treating physician's opinion which is not supported by the physician's own records").

### 3. Dr. Campbell's opinion regarding Plaintiff's mental limitations.

Dr. Campbell also completed a mental medical source statement form, and opined that Plaintiff is "markedly limited" in her ability to carry out detailed instructions and "complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 320-21. According to Dr. Campbell, Plaintiff is "moderately limited" in all other aspects. *Id.*

The ALJ rejected this opinion on grounds that Plaintiff "is receiving no mental health treatment, nor has she alleged a mental impairment. Furthermore, she made no complaints of social limitations throughout her

treatment records." *Id.* at 15. Plaintiff cites no medical evidence to dispute this conclusion, and the State agency psychologist, Dr. Pauline Hightower, opinioned that Plaintiff suffers from no mental impairments. *Id.* 304-19. Under these circumstances, the undersigned again finds no legal error in the ALJ's rejection of Dr. Campbell's opinion.

### C. The ALJ's alleged failure to include RFC limitations related to fatigue and insomnia.

Plaintiff also seeks reversal on grounds that the ALJ failed to include any limitations in her RFC related to her medication's side of effects, including "fatigue and insomnia," and "cognitive changes." Doc. 10, at 13-15. Again, the undersigned finds no grounds for reversal.

State agency physician Dr. Luther Woodcock noted that Plaintiff takes pain medication that has a sedating and fatigue-producing effect. AR 299, 302. Based on that finding, Dr. Woodcock recommended that Plaintiff "avoid working on unprotected heights [and] around dangerous moving machinery." *Id.* The ALJ gave great weight to Dr. Woodcock's opinion, *id.* at 15, and crafted Plaintiff's RFC to state that she "can have no exposure to unprotected heights or dangerous machinery." *Id.* at 13. Thus, it appears to the undersigned that the ALJ did in fact incorporate Plaintiff's "fatigue and insomnia" limitations into the RFC. Additionally, Plaintiff points to no legitimate medical opinion – other than Dr. Woodcock's − regarding "fatigue

and insomnia" limitations, nor does she explain what further RFC limitation she believes should be included based on her "fatigue and insomnia." So, the undersigned finds no reversible error. *See McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) ("To begin with, we agree with the magistrate judge that, [regarding multiple impairments], the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC [assessment] or discuss any evidence that would support the inclusion of any limitations.").

**D. The ALJ's finding regarding Plaintiff's limitation to SVP-2 level work.**

Dr. Woodcock opined that Plaintiff's pain affects her RFC, AR 302, and Plaintiff testified that her pain makes it difficult to concentrate. *Id.* at 15. Although the ALJ found Plaintiff to be less than fully credible, *see infra* § IV(E), he did credited her testimony by limiting her to "SVP-2 level work." AR 15 ("Due to the effects of pain and weakness, [Plaintiff] can only perform SVP-2 work."). "SVP" refers to a "specific vocational preparation," and a SVP-2 is in the class of unskilled work. Social Security Ruling 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). Such work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

Plaintiff argues that the ALJ failed to cite any evidence that she is capable of performing SVP 2 level work on a sustained basis. Doc. 10, at 15. But what Plaintiff overlooks is that there is *no legitimate medical evidence* suggesting that she cannot perform unskilled work on a sustained basis. That is, the ALJ legitimately rejected Dr. Campbell's opinions: Dr. Hightower opined that Plaintiff has no mental impairments, and Dr. Woodcock opined that Plaintiff is capable of performing sedentary work – with no skill limitations – despite her pain and pain-medication use. *See supra* § IV(B)(1)-(2), (C). Under such circumstances, the undersigned finds no legal error in the ALJ's determination that Plaintiff was capable of performing SVP 2 level work.

**E.     The ALJ's alleged error in assessing Plaintiff's credibility**.

The ALJ discussed the medical evidence and reiterated Plaintiff's testimony. Ultimately, he found her allegations "not entirely credible." AR 14. Particularly, the ALJ stated:

> I note [Plaintiff's] subjective complaints of pain are out of proportion to the objective medical evidence. [Plaintiff] testified she has used a motorized scooter for one year; however, Dr. Campbell consistently noted the claimant had a normal gait and station with no neurological deficits. [Plaintiff] has been noted to have diffuse tender points . . . but she reported she was able to take care of her children and pick them up from school, take care of her pets, attend to her personal needs, go out unaccompanied, drive, shop in stores, do the laundry, and sometimes clean. This level of activity is inconsistent with the claimant's testimony of

pain and inability to walk more than 15 steps without the use of a scooter.

*Id.* at 15.

Plaintiff challenges this credibility determination, claiming that: (1) the medical record supports her diagnosis of fibromyalgia, and (2) the ALJ improperly relied on her ability to "complete minimal daily activities." Doc. 10, at 16.

### 1. The ALJ's duty to assess credibility.

Once an ALJ finds that a claimant has a pain-producing impairment, he must take the next step and assess the claimant's credibility. *See* 20 C.F.R. § 405.1529(c)(4). In doing so, he should closely and affirmatively link his findings with substantial evidence. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

### 2. The ALJ's credibility assessment.

Plaintiff first challenges the ALJ's credibility determination on grounds that Dr. Campbell's opinions, and her prescriptions for pain medications, support her allegations. Doc. 10, at 16. But as discussed above, the ALJ rejected the treating physician's opinions. *See supra* § IV(B). And, the ALJ specifically considered (and accounted for) her pain medication use. AR 13-15. This court cannot reweigh the evidence simply because Plaintiff does not concur with the ALJ's determination. *See Lax v. Astrue*, 489 F.3d 1080, 1084

(10th Cir. 2007) (holding that it is not the court's province to "reweigh the evidence"); *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) ("Credibility determinations are peculiarly the province of the finder of fact . . . .").

Plaintiff next alleges that the ALJ relied too heavily on her ability to perform daily activities. Doc. 10, at 16. The undersigned disagrees. Without question, an ALJ may consider an individual's daily activities in assessing his or her credibility; it is only when an ALJ relies on the performance of *minimal* daily activities, like "television watching," that error occurs. *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004). Here the ALJ did not cite *minimal* daily activities, but relied on Plaintiff's ability to complete much more substantial activities – such as caring for children, shopping, and doing household laundry. *See Kruse v. Astrue*, 436 F. App'x 879, 886 (10th Cir. 2011) (noting that claimant's daily activities, including cleaning house, watching children, and shopping, were "not minimal" and finding "no error in the ALJ's consideration of [claimant's activities of daily living] as one aspect of his credibility finding"). More importantly, the ALJ also relied on the conflicts between Plaintiff's allegations and the medical evidence. *See id.* (affirming in part where the ALJ "did not solely rely on [the claimant's

activities of daily living]"). Under these circumstances, the Plaintiff has not demonstrated legal error in the ALJ's credibility assessment.

## V. Recommendation and notice of right to object.

For the reasons stated, the undersigned recommends that the court affirm the Commissioner's decision.

The undersigned advises the parties of their right to object to this report and recommendation no later than April 30, 2015, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 10th day of April, 2015.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE